Brian S. King, #4610
Brent J. Newton, #6950
Samuel M. Hall, #16066
**BRIAN S. KING, P.C.**
420 East South Temple, Suite 420
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com
brent@briansking.com
samuel@briansking.com

Attorneys for Plaintiff

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| M.R., individually and on behalf of J.S. a minor,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED HEALTHCARE INSURANCE COMPANY, UNITED BEHAVIORAL HEALTH, PFIZER INC., and the PFIZER HEALTH and WELFARE BENEFIT PLAN,<br><br>Defendants. | COMPLAINT<br><br><br><br>Case No. 2:23-cv-68 |

Plaintiff M.R., individually and on behalf of J.S. a minor, through her undersigned counsel, complains and alleges against Defendants United Healthcare Insurance Company, United Behavioral Health (collectively "United"), Pfizer Inc (the "Plan Admin"), and the Pfizer Health and Welfare Benefit Plan ("the Plan") as follows:

**PARTIES, JURISDICTION AND VENUE**

1. M.R. and J.S. are natural persons residing in New Hanover County, North Carolina. M.R. is J.S.'s stepmother.

1

2. United Healthcare Insurance Company is an insurance company headquartered in Hennepin County, Minnesota and was the third-party claims administrator, as well as the fiduciary under ERISA for the Plan during the treatment at issue in this case.

3. United Behavioral Health is the mental health arm of United Healthcare Insurance Company.

4. At all relevant times United acted as agent for the Plan and the Plan Admin.

5. The Plan Admin is the designated administrator for the Plan.

6. The Plan is a self-funded employee welfare benefits plan under 29 U.S.C. §1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA"). M.R. was a participant in the Plan and J.S. was a beneficiary of the Plan at all relevant times. M.R. continues to be a participant of the Plan.

7. J.S. received medical care and treatment at Evoke at Entrada ("Evoke") from August 20, 2020, to November 16, 2020. Evoke is a licensed treatment facility located in Washington County Utah, which provides sub-acute inpatient treatment to adolescents with mental health, behavioral, and/or substance abuse problems.

8. United, in its own capacity or under the brand name Optum denied claims for payment of J.S.'s medical expenses in connection with her treatment at Evoke.

9. This Court has jurisdiction over this case under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

10. Venue is appropriate under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(c) based on ERISA's nationwide service of process and venue provisions, and because United has an extensive business presence in Utah and the claims and appeals at issue in this case were

processed in United's Salt Lake City facility. In addition, the treatment at issue took place in Utah.

11. In addition, the Plaintiff has been informed and reasonably believes that litigating the case outside of Utah will likely lead to substantially increased litigation costs she will be responsible to pay and that would not be incurred if venue of the case remains in Utah. Finally, in light of the sensitive nature of the medical treatment at issue, it is the Plaintiff's desire that the case be resolved in the State of Utah where it is more likely both her and J.S.'s privacy will be preserved.

12. The remedies the Plaintiff seeks under the terms of ERISA and under the Plan are for the benefits due under the terms of the Plan, and pursuant to 29 U.S.C. §1132(a)(1)(B), for appropriate equitable relief under 29 U.S.C. §1132(a)(3) based on the Defendants' violation of the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"), for an award of statutory damages against the Plan Admin pursuant to 29 U.S.C. §1132(c) based on the failure of the agents of the Plan Admin, to produce within 30 days documents under which the Plan was established or operated, an award of prejudgment interest, and an award of attorney fees and costs pursuant to 29 U.S.C. §1132(g).

## BACKGROUND FACTS

### J.S.'s Developmental History and Medical Background

### Evoke

13. J.S. was admitted to Evoke on August 20, 2020, in an attempt to treat symptoms which included: depression, anxiety, suicidal ideation, disordered eating, poor academic performance, limited insight into her behaviors, and negative self-image.

14. In a letter dated October 20, 2020, United denied payment for J.S.'s treatment at Evoke. The letter gave the following justification for the denial:

> The Care Advocate was unable to authorize due to Non-Covered Service Including, but not limited to, unproven or experimental treatment.

15. On December 18, 2020, M.R. submitted a level one appeal of the denial of payment. M.R. reminded United that she was entitled to certain protections under ERISA during the review process, including a full, fair, and thorough review conducted by appropriately qualified reviewers which took into account all of the information she had provided, and which gave her the specific reasoning for the adverse determination, referenced the specific plan provisions on which the determination was based, and which identified any materials or information necessary to perfect the claim.

16. She asked that the reviewer be knowledgeable about generally accepted standards of medical practice and clinical best practices for outdoor behavioral health programs, and that they be qualified to fully address the arguments raised in the appeal process, including her contention that the denial violated MHPAEA. She also asked to be provided with a copy of any documentation related to United's decision to deny payment, including its internal notes.

17. She wrote that Evoke was duly licensed by the State of Utah to provide intermediate level outdoor behavioral health treatment and was also accredited by the Association for Experiential Education. She alleged that Evoke complied with all applicable governing state regulations and that coverage was available under the terms of the insurance policy.

18. She quoted the definition of experimental and investigational services in the insurance policy. She argued that Evoke did not meet this definition and it was especially apparent that Evoke was not an experimental service given its licensure and accreditation.

19. She stated that in her own research she was able to locate a United policy document for wilderness therapy services, but because this document stated it was superseded by the terms of the insurance policy, and more importantly because United had referenced this policy in the denial letter, United could not now rely on these criteria to justify its denial.

20. She included a letter from Dr. Michael Gass, an expert in the field, which criticized and offered a rebuttal of these criteria and stated that these wilderness programs were effective and well proven. She encouraged the reviewer to contact Dr. Gass.

21. She noted that the organization responsible for issuing and implementing insurance billing codes, the National Uniform Billing Committee ("NUBC") had assigned wilderness programs their own billing code. She argued that the NUBC would not have done this for an experimental or unproven service.

22. She included a decision from the independent review organization Federal Hearings & Appeals Services, Inc. which stated that a growing body of evidence demonstrated the safety and efficacy of wilderness programs, and this evidence demonstrated that "this mode of treatment is no longer an experimental treatment."

23. She contended that Evoke satisfied the definition of medically necessary care in her insurance policy and that MHPAEA compelled insurers to ensure that coverage for mental health services was offered at parity with coverage for analogous medical or surgical services. She identified skilled nursing, subacute rehabilitation, and inpatient hospice as some of the medical or surgical analogues to the mental health services J.S. received at Evoke.

24. She stated that United's true justification for the denial appeared to stem from its wilderness therapy criteria, however it did not appear to have any such criteria for

analogous medical or surgical services. She contended that this was an example of disparate treatment for mental health services and constituted a violation of MHPAEA.

25. She requested that United perform a parity compliance analysis on the plan to ensure no violations of MHPAEA had occurred.

26. She asked that if the denial was upheld she be provided with a copy of all documents under which the Plan was operated, including all governing plan documents, the summary plan description, any insurance policies in place for the benefits she was seeking, any administrative service agreements that existed, any clinical guidelines or medical necessity criteria utilized in the determination, along with their medical or surgical equivalents (whether or not these were used to evaluate the claim), along with the names, qualifications, and denial rates of all individuals who reviewed or were otherwise consulted about the claim (collectively the "Plan Documents").

27. She asked that in the event United was not acting on behalf of the Plan Admin for purposes of providing the documents she requested that it forward her request to the appropriate entity.

28. In a letter dated January 22, 2021, United upheld the denial of payment for J.S.'s treatment at Evoke. The letter stated in pertinent part:

> **Based on the available information reviewed, I am upholding the previous denial effective 10/15/2020 through 11/16/2020 due to authorization is unavailable** [sic] **due to Non-Covered Svc Including, but not limited to, Unproven or Experimental Treatment at Evoke Entrada LLC.**
>
> **Based upon the benefits section of the members' PFIZER-USS Benefit Plan Summary Plan Description starting on page 48 the services being requested are listed as a non-covered service it states,** [sic] **services, therapies and/or treatments that are ,considered** [sic] **experimental or unapproved by your Claims Administrator's medical policy. Authorization unavailable due to Non-Covered Svc Including, but not limited to, Unproven or Experimental**

6

> **Treatment. The previous denial will be administratively upheld** (emphasis in original).

29. On February 26, 2021, M.R. submitted a level two appeal of the denial of payment for J.S.'s treatment at Evoke. She pointed out that United had listed the incorrect dates of service in the letter and had made no effort to address any of the arguments she raised, including her contention that the denial was a violation of MHPAEA. In addition, there was no indication that the reviewer was adequately qualified.

30. She asked that the next reviewer rectify these mistakes and fulfill their obligations under ERISA in accordance with United's fiduciary duty. She again asked for a MHPAEA compliance analysis to be performed and again requested a copy of the Plan Documents. She reiterated that J,S.'s treatment was a covered benefit under the terms of the Plan and was not experimental or investigational in nature.

31. In a letter dated March 29, 2021, United upheld the denial of payment for J.S.'s treatment. Although the letter was signed by a different reviewer, the letter reused the previous justifications from the January 22, 2021, denial verbatim and even retained the same typographical errors.

32. As she had yet to receive the materials she had requested, M.R. made one last request to procure the documentation to which she was entitled under ERISA in a letter dated September 6, 2022, sent to United and the Plan Admin. In particular she asked to be provided with:

- Disclosure of the identities of all individuals with clinical or medical expertise who evaluated the treatment for our daughter, [J.S.], at Evoke at Entrada, copies of those individuals' *curriculum vitae*, copies of any memoranda, emails, reports, or other documents reflecting the rationale of the reviewers in denying coverage for [J.S.]'s claim;
- A complete copy of both the medical necessity criteria utilized by United Behavioral Health in determining that [J.S.]'s treatment was not medically necessary and that

  treatment for her at a lower level of care was appropriate;
- A complete copy of the medical necessity criteria utilized by the Plan for skilled nursing facilities, sub-acute inpatient rehabilitation treatment, and inpatient hospice treatment.  This is necessary to allow us to carry out an evaluation of whether the Plan has complied with the requirements of the federal Mental Health Parity and Addiction Equity Act;
- Complete copies of any and all internal records compiled by United Behavioral Health and Pfizer in connection with [J.S.]'s claim including, but not limited to, telephone logs, memoranda, notes, emails, correspondence, or any other communications;
- A copy of the summary plan description, master plan document, certificate of insurance, insurance policy, and any other document under which [J.S.]'s insurance plan is operated;
- Copies of any and all administrative service agreements, contracts or other documents which described and defined the relationship, rights and obligations of and between you, the plan administrator, and United Behavioral Health;
- Copies of documents identifying the process, strategies, evidentiary standards, or other factors the Plan used to determine that the treatment at Evoke was experimental and investigational;
- Copies of documents identifying the processes, strategies, evidentiary standards, and other factors used to determine whether treatment at sub-acute inpatient programs for medical or surgical treatment is experimental and investigational;
- Copies of documents identifying the self-compliance analysis the Plan and United Behavioral Health have carried out to determine the extent to which they are complying with the federal Mental Health Parity and Addiction Equity Act;
- Copies of documents identifying the processes, strategies, evidentiary standards, and other factors used to apply a nonquantitative treatment limitation with respect to medical/surgical benefits and mental health or substance use disorder benefits under the plan.

33. In a letter dated October 3, 2022, the Plan Admin partially complied with Plaintiff's request for documents. The letter summarized its contents as:

    - The 2020 Pfizer Health and Welfare Benefit Plan Document and Amendments
    - The 2020 Pfizer Health and Welfare Benefit Plan Summary Plan Description with SMMs.

34. On October 28, 2022, United subsidiary Optum also partially complied with the request for production of documents. The Optum letter went through the items in the September 26, 2022, letter point by point and addressed what was included in the production and why it was provided.

8

35. Despite the thorough nature of United's response however, it remains deficient in some regards. For instance, United refused to provide a copy of any of its contracts or administrative service agreements, and instead stated that the production of the summary plan description was sufficient.

36. Consequently, while Plaintiffs were provided with much of the documentation required to be produced upon request, neither United, nor the Plan Admin fully responded to Plaintiff's request for production of documents.

37. The Plaintiff exhausted her pre-litigation appeal obligations under the terms of the Plan and ERISA.

38. The denial of benefits for J.S.'s treatment was a breach of contract and caused M.R. to incur medical expenses that should have been paid by the Plan in an amount totaling over $50,000.

## FIRST CAUSE OF ACTION

### (Claim for Recovery of Benefits Under 29 U.S.C. §1132(a)(1)(B))

39. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as United, acting as agent of the Plan, to discharge its duties in respect to claims processing solely in the interests of the participants and beneficiaries of the Plan. 29 U.S.C. §1104(a)(1).

40. United and the Plan failed to provide coverage for J.S.'s treatment in violation of the express terms of the Plan, which promise benefits to employees and their dependents for medically necessary treatment of mental health and substance use disorders.

41. ERISA also underscores the particular importance of accurate claims processing and

evaluation by requiring that administrators provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with plaintiffs in the pre-litigation appeal process. 29 U.S.C. §1133(2).

42. The denial letters produced by United do little to elucidate whether United conducted a meaningful analysis of the plaintiff's appeals or whether it provided her with the "full and fair review" to which she is entitled. United failed to substantively respond to the issues presented in M.R.'s appeals and did not meaningfully address the arguments or concerns that the Plaintiff raised during the appeals process.

43. The deficiencies of United's reviews are epitomized by its verbatim reuse of a denial rationale from a previous letter to respond to M.R.'s level two appeal. There is no indication from this denial that United's reviewer made even a passing attempt at responding to the arguments raised in the appeal process.

44. United and the agents of the Plan breached their fiduciary duties to J.S. when they failed to comply with their obligations under 29 U.S.C. §1104 and 29 U.S.C. §1133 to act solely in J.S.'s interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries, to produce copies of relevant documents and information to claimants upon request, and to provide a full and fair review of J.S.'s claims.

45. The actions of United and the Plan in failing to provide coverage for J.S.'s medically necessary treatment are a violation of the terms of the Plan and its medical necessity criteria.

46. While the presentation of alternative or potentially inconsistent claims in the manner that Plaintiffs state in their first, second, and third causes of action is specifically anticipated

and allowed under F.R.Civ.P. 8, Plaintiffs contend they are entitled to relief and appropriate remedies under each cause of action.

## SECOND CAUSE OF ACTION

### (Claim for Violation of MHPAEA Under 29 U.S.C. §1132(a)(3))

47. MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and MHPAEA. The obligation to comply with both ERISA and MHPAEA is part of United's fiduciary duties.

48. Generally speaking, MHPAEA requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of medical/surgical disorders.

49. MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits and also makes illegal separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits. 29 U.S.C.§1185a(a)(3)(A)(ii).

50. Impermissible nonquantitative treatment limitations under MHPAEA include, but are not limited to, medical management standards limiting or excluding benefits based on medical necessity; refusal to pay for higher-cost treatment until it can be shown that a lower-cost treatment is not effective; and restrictions based on geographic location, facility type, provider specialty, or other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. §2590.712(c)(4)(ii)(A), (F), and (H).

51. The medical necessity criteria used by United for the intermediate level mental health treatment benefits at issue in this case are more stringent or restrictive than the medical necessity criteria the Plan applies to analogous intermediate levels of medical or surgical benefits.

52. Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for J.S.'s treatment include sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities.

53. When United and the Plan receive claims for intermediate level treatment of medical and surgical conditions, they provide benefits and pay the claims as outlined in the terms of the Plan based on generally accepted standards of medical practice. United and the Plan evaluated J.S.'s mental health claims using medical necessity criteria that deviate from generally accepted standards of medical practice. This process resulted in a disparity because the Plan denied coverage for mental health benefits when the analogous levels of medical or surgical benefits would have been paid.

54. As an example of disparate application of medical necessity criteria between medical/surgical and mental health treatment, M.R. noted that United restricted the availability of J.S.'s treatment by forcing it to comply with requirements contained only within proprietary criteria.

55. M.R. argued that not only did United exempt comparable medical or surgical services from these requirements, but it did not appear to have proprietary medical or surgical criteria for analogous medical/surgical care at all. M.R. requested to be provided with these criteria if they existed, but United ignored this request.

56. United denied J.S.'s outdoor behavioral health treatment in large part on the basis that it was experimental or investigational. However, the National Uniform Billing Committee, the organization responsible for developing and issuing revenue codes for health care services, has assigned wilderness programs their own separate revenue code.

57. Plaintiff is aware of no analogous medical or surgical facilities which have been assigned such a revenue code that are categorically excluded by United on the basis that they are experimental or investigational.

58. United's denials are based primarily on factors prohibited by MHPAEA such as limitations on facility type and geographic location. If J.S. had received the same treatment in an indoor residential treatment environment, United would not have denied payment on an experimental/investigational basis.

59. United's denial is predicated on the fact that treatment at Evoke takes place in an outdoor environment, and disregards factors such as Evoke's licensure and accreditation which attest to the clinical nature of the services.

60. In this manner, the Defendants violate 29 C.F.R. §2590.712(c)(4)(i) because the terms of the Plan and the medical necessity criteria utilized by the Plan and United, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied, than the processes, strategies, standards or other factors used to limit coverage for medical/surgical treatment in the same classification.

61. United and the Plan did not produce the documents the Plaintiff requested to evaluate medical necessity and MHPAEA compliance, nor did they address in any substantive

capacity the Plaintiff's allegations that United and the Plan were not in compliance with MHPAEA.

62. In fact, despite M.R.'s request that United and the Plan conduct a parity compliance analysis and despite the direction from the Department of Labor that ERISA plan and claim administrators perform parity compliance analyses, United and the Plan have not provided M.R. with any information about whether they have carried out any parity compliance analysis and, to the extent that any such analysis was performed, United and the Plan have not provided M.R. with any information about the results of this analysis.

63. The violations of MHPAEA by United and the Plan are breaches of fiduciary duty and give the Plaintiff the right to obtain appropriate equitable remedies as provided under 29 U.S.C. §1132(a)(3) including, but not limited to:

(a) A declaration that the actions of the Defendants violate MHPAEA;

(b) An injunction ordering the Defendants to cease violating MHPAEA and requiring compliance with the statute;

(c) An order requiring the reformation of the terms of the Plan and the medical necessity criteria utilized by the Defendants to interpret and apply the terms of the Plan to ensure compliance with MHPAEA;

(d) An order requiring disgorgement of funds obtained by or retained by the Defendants as a result of their violations of MHPAEA;

(e) An order requiring an accounting by the Defendants of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan as a result of the Defendants' violations of MHPAEA;

(f) An order based on the equitable remedy of surcharge requiring the Defendants to provide payment to the Plaintiff as make-whole relief for her loss;

(g) An order equitably estopping the Defendants from denying the Plaintiff's claims in violation of MHPAEA; and

(h) An order providing restitution from the Defendants to the Plaintiff for her loss arising out of the Defendants' violation of MHPAEA.

## THIRD CAUSE OF ACTION

**(Request for Statutory Penalties Under 29 U.S.C. §1132(a)(1)(A) and (c))**

64. United, acting as agent for the Plan Admin, is obligated to provide to participants and beneficiaries of the Plan within 30 days after request, documents under which the Plan was established or operated, including but not limited to any administrative service agreements between the Plan and United, the medical necessity criteria for mental health and substance abuse and medical necessity criteria for skilled nursing and rehabilitation facilities.

65. In spite of M.R.'s requests during the appeal process for United to produce the documents under which the Plan was operated, and her instructions to forward that request to the appropriate entity if United was not acting on behalf of the Plan Admin in this regard, United repeatedly failed to produce to the Plaintiff the documents under which the Plan was operated, including but not limited to any administrative service agreements between the Plan and United, the medical necessity criteria for mental health and substance abuse and medical necessity criteria for skilled nursing and rehabilitation facility treatment within 30 days after they had been requested.

66. After United repeatedly failed to provide these materials, M.R. sent one final letter dated September 6, 2022, to both United and the Plan Admin again requesting the documents which she was statutorily entitled to receive upon request. United and the Plan Admin largely did not comply with M.R.'s request for documents.

67. As noted above, the Plan Admin did send Plaintiff a letter dated October 3, 2022, which included materials related to the summary plan description, but Plaintiff did not receive the other items that she had requested.

68. United also responded on October 28, 2022, with a more thorough production, however United's response omitted required materials such as the administrative service agreement between United and the Plan.

69. The failure of the Plan Admin and its agent United, to fully produce the documents under which the Plan was operated, as requested by the Plaintiff, within 30 days of M.R.'s request for ERISA documents, provides the factual and legal basis under 29 U.S.C. §1132(a)(1)(A) and (c) for this Court to impose statutory penalties up to $110 per day on the Plan Admin from 30 days from the date of each of these letters to the date of the production of the requested documents.

70. In addition, Plaintiff is entitled to an award of prejudgment interest pursuant to U.C.A. §15-1-1, and attorney fees and costs pursuant to 29 U.S.C. §1132(g)

WHEREFORE, the Plaintiff seeks relief as follows:

1. Judgment in the total amount that is owed for J.S.'s medically necessary treatment at Evoke under the terms of the Plan, plus pre and post-judgment interest to the date of payment;

2. Appropriate equitable relief under 29 U.S.C. §1132(a)(3) as outlined in Plaintiff's

Second Cause of Action;

3. For an award of statutory penalties of up to $110 a day against the Plan Admin after the first 30 days for each instance of the Plan Admin and its agent United's failure or refusal to fulfill their duties, to provide the Plaintiff with the documents she had requested.

4. Attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g); and

5. For such further relief as the Court deems just and proper.

DATED this 27th day of January, 2023.

By    <u>s/ Brian S. King</u>
       Brian S. King
       Attorney for Plaintiff

County of Plaintiff's Residence:
New Hanover County, North Carolina.