USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/29/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
M.R., individually and on behalf of J.S., a minor,  :
:
:
Plaintiff,  :   1:23-cv-4748-GHW
:
-against-  :   MEMORANDUM OPINION &
:   ORDER
:
UNITED HEALTHCARE INSURANCE  :
COMPANY, et al.,  :
Defendants.  :
-------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

### I. BACKGROUND

In 2020, Plaintiff's stepdaughter received inpatient mental health treatment at a wilderness therapy program called Evoke. Plaintiff's health insurance provider denied coverage for the treatment. Plaintiff claims that the denial violated the Mental Health Parity and Addiction Equity Act of 2008 (the "Parity Act"), which prohibits insurers from applying more restrictive coverage standards to mental health treatment than to analogous medical and surgical benefits. Defendants moved to dismiss the complaint on the grounds that Plaintiff's claim was untimely, that she failed to state a claim under the Parity Act, and that she failed to state a claim for statutory penalties against any of the defendants.

Judge Gary Stein issued a thoughtful and well-reasoned report and recommendation in response to the motion to dismiss. Dkt. No. 35 (the "R&R"). In the R&R, Judge Stein recommended denying the motion to dismiss, except with respect to Plaintiff's claims for statutory penalties against all of the defendants other than Pfizer. Because the R&R is sound, the Court adopts it in full and denies Defendants' motion to dismiss except with respect to Plaintiff's claims for statutory penalties against all of the defendants other than Pfizer.

The Court refers to the Report and Recommendation for a comprehensive description of

the facts and procedural history of the case.[1]  On December 4, 2023, Defendants timely filed objections to the R&R.  Dkt. No. 39 ("Objections").  Plaintiff filed a response to Defendants' Objections on December 18, 2023.  Dkt. No. 40 ("Response").

## II.     STANDARD OF REVIEW

District courts may "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).  A district court must "determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3).  "To the extent, however, that the party makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the Report strictly for clear error." *IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, No. 07-cv-6865-LTS-GWG, 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008) (citation omitted); *see also Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error where objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition.") (citation omitted).  "Objections of this sort are frivolous, general and conclusory and would reduce the magistrate's work to something akin to a meaningless dress rehearsal.  The purpose of the Federal Magistrates Act was to promote efficiency of the judiciary, not undermine it by allowing parties to relitigate every argument which it presented to the Magistrate Judge." *Vega v. Artuz*, No. 97 Civ. 3775 (LTS)(JCF), 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002) (citations and internal quotation marks omitted).

## III.    ANALYSIS

For purposes of its evaluation of the R&R, the Court treats the Objections as sufficiently precise to merit *de novo* review.  The Court has conducted a *de novo* review of the arguments

---

[1] Unless otherwise noted, capitalized terms and acronyms in this opinion are used as defined in the R&R.

presented in connection with the motion to dismiss, informed by the arguments presented in the Objections and the Response. Having done so, the Court finds that Defendants' objections are unpersuasive and adopts in full the thoughtful and well-reasoned R&R by Judge Stein.

Defendants object to the R&R on three grounds. First, they assert that because Plaintiff failed to file her case during the Plan's contractual limitations period[2] and failed to adequately plead that she was entitled to equitable tolling, the action is untimely. Objections at 4–6. Second, they argue that the Court should find that Plaintiff failed to state a claim for a violation of the Parity Act because, among other things, she failed to adequately plead that the Plan used more stringent criteria, or applied facially neutral criteria more restrictively, to evaluate coverage of mental health services as compared to how it evaluated coverage of medical or surgical services. Objections at 8–9. Third, Defendant Pfizer claims that Plaintiff failed to state a claim for statutory penalties against Pfizer for its failure to provide her with requested Plan documents, because she admitted she mailed her request to the wrong address. Objections at 18–24. The Court finds these objections unpersuasive. It will address each in turn.

### A. Plaintiff's Action Was Timely

Judge Stein correctly recommended that the Court find that Plaintiff's action was timely even though she filed it outside of the Plan's contractual limitations period. As he concluded, 29 C.F.R. § 2560.503-1(g)(1)(iv) required Defendants to notify Plaintiff of the contractual limitations period in their letters denying coverage, and their failure to do so made the contractual limitations period unenforceable. R&R at 20.

First, Defendants urge the Court to adopt the view, espoused by the court in *Heimeshoff v. Hartford Life & Accident Ins. Co.* that 29 C.F.R. § 2560.503-1(g)(1)(iv) contains no such notification

---

[2] The contractual limitations period is the period during which an insurance holder may file suit to challenge the insurer's "final decision" to deny coverage. *See* R&R at 11. It is defined by the insurance plan, and in this case was one year from the date of denial of coverage. *See id.* at 12.

3

requirement. No. 3:10 Civ. 1813 (JBA), 2012 WL 171325, *6 (D. Conn. Jan. 20, 2012). But as Judge Stein determined, *Novick v. Metro Life Ins. Co.*, 764 F. Supp. 2d 653, 660-64 (S.D.N.Y. 2011), along with many other district and circuit courts, correctly interpreted that provision to require ERISA plans to provide claimants notice of contractual limitations periods in letters denying coverage. *See* R&R at 15–17. As Judge Stein explained, this interpretation both "honor[s] the regulation's text" and "promotes the regulation's animating purpose: to provide 'adequate notice in writing' of claim denials and afford claimants an opportunity for 'full and fair review' of their claims." *Id.* at 18. Judge Stein also pointed out that "the DOL itself has endorsed [this] interpretation of Section 2560.503-1(g)(1)(iv) . . . ." *Id.* at 19. Therefore, as Judge Stein correctly concluded, Plaintiff adequately pleaded that Defendants violated this regulation by alleging that they failed to provide Plaintiff the required notice of the contractual limitations period.

Second, Defendants argue that in spite of the alleged lack of notice in the denial letters, Plaintiff admitted to having notice of the contractual limitations period from her review of the Plan. Objections at 5. They claim that such notice deprives her of any claim to equitable tolling of the contractual limitations period.[3] *Id.* But as Judge Stein explained, Plaintiff did not, and needed not, rely on equitable tolling to make her action timely. "Rather, Plaintiff argues that the remedy for Defendants' regulatory violation is to find a waiver of the contractual limitations period." R&R at 21. As Judge Stein correctly concluded, Defendants' regulatory violation waived the contractual limitations period. *See id.* He correctly observed that finding a waiver is the "predominant approach" to a defendant's violation of this regulation. *Id.* (quoting *Santana-Diaz v. Metro. Life Ins. Co.*, 816 F.3d 172, 184 (1st Cir. 2016) (internal quotations omitted)). The Court follows the

---

[3] Defendants also cite to *Prabhakar v Life Ins. Co. of North Am.*, 996 F. Supp. 2d 124, 139-141 (E.D.N.Y. 2013) for the proposition that Plaintiff's waiver argument "sounds in equitable tolling." Objections at 5. But in that case, unlike in this one, the plaintiff did not assert that the defendant had violated 29 C.F.R. § 2560.503-1(g)(1)(iv), waiving the contractual limitations period. Therefore, unlike in this case, the plaintiff's only argument that her action was timely was equitable tolling of the contractual limitations period.

predominant approach because, as Judge Stein explained, "[t]o employ an equitable tolling analysis, as Defendants urge, instead of deeming the limitations period unenforceable would render hollow the important disclosure function of [ERISA] . . . effectively rendering it a dead letter." *Id.* at 22 (quoting *E.F. v. United Healthcare Ins. Co.*, No. 2:21 Civ. 190 (JNP) (DBP), 2022 WL 957200, at *6 (D. Utah Mar. 30, 2022) (citation omitted)). Therefore, as Judge Stein concluded, "[b]ecause the contractual limitations period is inapplicable, equitable tolling is not 'an obstacle, or even relevant, to [the plaintiff's] claim.'" *Id.* (quoting *Santana-Diaz*, 816 F.3d at 183–184). Accordingly, the Court finds Defendants' objection to this portion of the R&R unpersuasive.

### B. Plaintiff Stated a Claim for Violation of the Parity Act

Judge Stein correctly concluded that Plaintiff stated a claim for violation of the Parity Act. He identified the proper pleading standard, which required Plaintiff to plead that "(1) the insurance plan is of the type covered by the Parity Act; (2) the insurance plan provides both medical benefits and mental-health benefits; (3) the plan has a treatment limitation—either quantitative or nonquantitative—for one of those benefits that is more restrictive for mental-health treatment than it is for medical treatment; and (4) the mental-health treatment is in the same classification as the medical treatment to which it is being compared." R&R at 29–30 (quoting *Gallagher v. Empire HealthChoice Assur., Inc.*, 339 F. Supp. 3d 248, 256 (S.D.N.Y. 2018)).

Defendants do not dispute that these are the elements required to adequately plead a Parity Act claim or that Plaintiff adequately pleaded the first, second, and fourth elements of the claim but argue that she failed to adequately plead the third. Objections at 8. Defendants argue that in order to adequately plead the third element, Plaintiff needed to allege "that the Plan is more stringent in how it determines if a mental health service" satisfies plan criteria "as compared to how it determines if medical/surgical services" satisfy plan criteria "or that Defendants apply the processes, strategies, evidentiary standards, or other factors more stringently to mental health as compared to medical/surgical benefits." Objections at 8–9 (quotations omitted).

But as Judge Stein concluded in the R&R, Plaintiff adequately pleaded the third element of her Parity Act claim by alleging that "a mental-health treatment is categorically excluded while a corresponding medical treatment is not." R&R at 34 (quoting *Gallagher*, 339 F. Supp. 3d at 257).[4] "[S]uch allegations sufficiently plead a 'form of process' that runs afoul of 29 C.F.R. § 2590.712(c)(4)(i)'s prohibition on the use of any processes, strategies, evidentiary standards, or other factors to apply NQTLs more stringently to mental health benefits than to comparable medical/surgical benefits in the same classification." *Id.* at 36 (quoting *Gallagher*, 339 F. Supp. 3d at 257) (other internal quotations omitted). Judge Stein cogently reasoned that the pleading standard did not require Plaintiff to allege additional facts about Defendants' application of Plan criteria because "[a]s numerous courts in this District and elsewhere have recognized, 'the nature of NQTL Parity Act claims counsels against a rigid pleading standard.'" *Id.* at 39 (quoting *Bushell v. UnitedHealth Grp., Inc.*, No. 17 Civ. 2021 (JPO), 2018 WL 1578167, at *6 (S.D.N.Y. Mar. 27, 2018)). "Because it is difficult for a plaintiff to 'find out the process her insurer uses to evaluate analogous medical claims' absent an opportunity for discovery, requiring such details to be pleaded in the Complaint 'would likely create a serious obstacle to meritorious Parity Act claims.'" *Id.* (quoting *Bushell*, 2018 WL 1578167, at *6) (collecting cases)).

Defendants also argue that the R&R "erred in characterizing the outcome of the application of the NQTL rules as a 'categorical exclusion' of wilderness programs that forms the basis of a proper MHPAEA claim. Instead, the NQTL at issue, the 'experimental or investigational' exclusion, indisputably applies to both mental health and medical/surgical benefits." Objections at 39. But Judge Stein explained that "neither the fact that the Pfizer Plan contains no express wilderness therapy program exclusion, nor the fact that the Plan's exclusion for unproven or experimental

---

[4] Judge Stein pointed out that Plaintiff also alleged that Evoke is licensed and accredited as a sub-acute inpatient treatment inpatient treatment program, and that the NUBC has assigned wilderness therapy programs their own billing code. R&R at 31. In contrast, the Plan does not exclude coverage for any "analogous forms of sub-acute inpatient medical/surgical treatment settings that are licensed and accredited and have been issued a NUBC billing code." *Id.*

services on its face applies equally to mental health and medical/surgical services is fatal to Plaintiff's claim." R&R at 34–35 (citations and quotations omitted). This is because Plaintiff alleges that "in practice," the "experimental or investigational" exclusion is not applied equally. *Id.* at 36. Instead, it is applied to create a categorical exclusion "for even state-licensed wilderness therapy programs but not for analogous forms of inpatient medical/surgical treatment." *Id.* at 36.[5]

Next, Defendants argue that the R&R erred in finding that it "could not determine if wilderness therapy is a proper analogue to skilled nursing facilities because it is an issue of fact that cannot be decided at the motion to dismiss stage." Objections at 14–15. Defendants urge the Court to instead find as a matter of law that wilderness therapy is not analogous to skilled nursing. Defendants point out that the "the Final Rules of MHPAEA made clear that residential treatment centers are 'analogous' to skilled nursing facilities on the medical/surgical side" and that in contrast, the Final Rules did not explicitly name wilderness therapy as an analogue to skilled nursing. *Id.* at 15. However, Defendants identify no authority in this district or elsewhere holding that this omission is determinative of whether wilderness therapy and skill nursing facilities are analogous as a matter of law. Nor do they argue that the Final Rules establish that wilderness therapy is *not* analogous to skilled nursing facilities. Judge Stein correctly concluded, like other courts in this district and elsewhere, that whether wilderness therapy and skilled nursing are analogous is an issue of fact. *See* R&R at 37–38 (citing *Gallagher*, 339 F. Supp. at 258 and *T.E. v. Anthem Blue & Blue Shield*, No. 3:22 Civ. 202 (DJH) (LLK), 2023 WL 2634059, at *3 (W.D. Ky. Mar. 24, 2023)).[6] *See also Patrick S.*

---

[5] Judge Stein also noted that "[a]s Defendants define the concept of a 'categorical exclusion,' the Plan would have to categorically exclude coverage for all 'intermediate level of care treatment for mental health,' not just for wilderness therapy specifically." He correctly concluded that "[t]his argument . . . cannot be reconciled" with the relevant caselaw on this issue. R&R at 37. He also explained why Defendants are incorrect to object that Plaintiff's allegations do not "mirror those in *Gallagher*." Objections at 13. As with the Plan here, "[t]he plan in Gallagher likewise did not expressly exclude, or mention, wilderness therapy." R&R at 35.

[6] In support of their argument that the services are not analogous as a matter of law, Defendants present facts about the "unproven nature" of wilderness therapy programs, their distinct licensing requirements, and limitations on the services they provide. Objections at 16 n. 3. On a motion to dismiss, a court must generally "limit itself to the facts stated in the complaint." *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 192 (2d Cir. 2006) (quoting *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999)). That Defendants present facts conflicting with the allegations in Plaintiff's complaint to

7

*v. United Behav. Health*, 516 F. Supp. 3d 1303, 1308 (D. Utah 2021) (by arguing that skilled nursing is not analogous to wilderness therapy, "Defendants are asking the Court to look to the merits of Plaintiffs' allegations, but that is not appropriate at the motion to dismiss stage of litigation. Rather, the Court must accept these allegations as true at this stage").

Finally, Defendants protest that, "[u]nder the logic of the R&R, the Plan would have to cover unproven or experimental services on the mental health side simply because the Plan covers skilled nursing facility care, a heavily regulated service (and not unproven or experimental) on the medical/surgical side." Objections at 16. But this concern is somewhat overblown. The Court's holding is narrow and is not novel. Judge Stein merely applied the prevailing legal standard to the specific facts of this case. Accordingly, the Court finds Defendants' objections to this portion of the R&R unpersuasive.

### C. Plaintiff Stated a Claim for Statutory Penalties Against Pfizer

Judge Stein correctly concluded that Plaintiff stated a claim for statutory penalties against Pfizer under 29 U.S.C. § 1132(c) by alleging that it failed to mail her the Plan documents she requested. As Judge Stein explained, that section of ERISA provides that "[a]ny 'administrator' who fails or refuses to comply with such a request 'by mailing the material requested to the last known address of the requesting participant or beneficiary' may be held 'personally liable to such participant or beneficiary' for statutory damages." R&R at 40 (quoting § 1132(c)(1)(B)).

Defendants argue that because Plaintiff admits that she sent her request for plan documents to the address of the Plan Sponsor rather than the Plan Administrator, § 1132(c)(1)(B) does not apply. However, as the R&R correctly identified, the Plan Administrator and the Plan Sponsor "are, in fact, the *same* entity: Pfizer Inc." *Id.* at 42. Moreover, Pfizer responded to Plaintiff's request within the 30-day statutory time period using Plan Administrator letterhead, demonstrating that the

---

argue that wilderness therapy is not analogous to skilled nursing further supports Judge Stein's conclusion that this is a question of fact and not law.

Plan Administrator "treated it as an enforceable request under ERISA." *Id.* As the R&R explained at length, "[n]othing in the relevant ERISA provisions lends support to Defendants' hyper-technical argument." *Id.* at 43. Therefore, the Court finds Defendants' objection to this portion of the R&R unpersuasive.

### IV.   CONCLUSION

For these reasons, the Court accepts and adopts the thorough and well-reasoned R&R in its entirety. Defendants' motion to dismiss GRANTED in part and DENIED in part. Defendants' motion to dismiss Plaintiff's claims for statutory penalties against Defendants other than Pfizer is granted. Defendants' motion to dismiss Plaintiff's other claims is denied. The Clerk of Court is directed to terminate the motion pending at Dkt. No. 26.

SO ORDERED.

Dated: February 29, 2024  
New York, New York

_____  
GREGORY H. WOODS  
United States District Judge